UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANNETTE DENNEY,<br><br>    Plaintiff,<br><br>v.<br><br>ANDREW SAUL,[1] Commissioner of Social Security,<br><br>    Defendant. | No. 1:18-cv-00689-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.    Introduction**

Plaintiff Mary Annette Denney ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[2] *See* Docs. 16 and 17. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] Commissioner of Social Security Andrew Saul is substituted as Defendant pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).
[2] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 7 and 8.

1

**II. Procedural Background**

On May 12, 2014, Plaintiff filed an application for disability insurance benefits alleging disability beginning February 1, 2013. AR 15. The Commissioner denied the application initially on August 4, 2014, and upon reconsideration on October 20, 2014. AR 15. On October 23, 2014, Plaintiff filed a timely request for a hearing before an Administrative Law Judge. AR 15.

Administrative Law Judge Timothy S. Snelling presided over an administrative hearing on July 15, 2016. AR 27-77. Plaintiff appeared and was represented by an attorney. AR 27. Impartial vocational expert Jose Chaparro (the "VE") also testified. AR 27.

On November 1, 2016, the ALJ denied Plaintiff's application. AR 15-22. The Appeals Council denied review on March 22, 2018. AR 1-4. On May 20, 2018, Plaintiff filed a complaint in this Court. Doc. 1.

**III. Factual Background**

**A. Plaintiff's Testimony**

Plaintiff (born September 9, 1960) completed high school and a year and a half of business college. AR 32-33. Later, she trained as a commercial driver and drove a truck cross-country for one year. AR 33. Plaintiff had relinquished her class A driver's license since she was no longer physically able to drive a truck. AR 33-34.

Plaintiff had multiple orthopedic problems including a congenital spine defect, arthritis of the cervical spine and shoulders, degenerative disc disease, scoliosis, degenerative joint disease of her hips, anxiety and depression. AR 59-60. She was overweight (5'7" tall, 224 pounds). AR 59.

Plaintiff most recently worked as a shift lead at Love's truck stop. AR 37-38. Her job was to ensure that the drivers received all the customer care that they required. AR 38. Job responsibilities included laundering and providing towels and washcloths for showers, cleaning showers, maintaining the coffee bar, staffing the cashier position, stocking the convenience store, working in the cooler and supervising the other employees.[3] AR 38-43. Plaintiff loved her job

---

[3] Vocational expert Jose Chaparro characterized the position as management trainee (assistant manager) (DOT No. 189.167-018, light work, SVP 6). AR 46.

but was fired after she took ten working days off for dental treatment. AR 40, 47-48. Although Plaintiff was disappointed to lose her job she testified that she would not likely have held the job for more than one additional year because the work was physically difficult and caused knee, hip and back pain. AR 52. In particular, her hip and shoulder pain limited her ability to stand at the cash register. AR 53.

Plaintiff received chiropractic treatment for her back and hips and saw a medical doctor for treatment of her neck. AR 57. Her knee problems resolved after she realized that her antidepressants caused her legs to swell and made her knees painful. AR 57.

Plaintiff could stand about 30 minutes before needing to sit, could walk about 300 feet before needing a break, and could sit for about an hour. AR 64-65. Because Plaintiff's cervical spine was unstable, walking caused severe facial pain. AR 65. Plaintiff could not look down because she cannot bend her neck forward. AR 66. She could lift a gallon of milk. AR 65-66. Reaching and bending were also difficult. AR 66-67.

### B. Medical Treatment

The record includes notes of chiropractic treatment on four or five occasions in a period beginning December 28, 2012 and ending on June 26, 2013. AR 299-300. The minimal treatment notes are largely illegible.

On February 16, 2014, Plaintiff sought treatment in the emergency department of Tulare Regional Medical Center for headache and neck pain that had lasted for three days. AR 522. Medical staff diagnosed a migraine headache and administered Dilaudid and Phenergan. AR 523.

The administrative record includes extensive records of Plaintiff's physical and mental health treatment at the Tulare Community Health Clinic (TCHC). AR 303-04, 318-33, 374-427. Ravi Kumar, M.D., first saw Plaintiff as a new patient on March 12, 2014. AR 308-10. Plaintiff told Dr. Kumar that she had scoliosis for which she had receiver chiropractic neck adjustments three times weekly for thirty years, but was out of work and could no longer pay for chiropractic treatment. AR 308. Plaintiff was in pain and using marijuana to fall asleep at night. AR 308. Dr. Kumar diagnosed pain in Plaintiff's shoulder joint, cervicalgia, scoliosis and kyphoscoliosis, and referred Plaintiff for a CT scan of her cervical spine. AR 308. The CT scan revealed

minimal left-sided neural foraminal narrowing at multiple levels secondary to hypertrophic change, straightened lordosis and degenerative disk space narrowing and spurring at C6-C7. AR 311. On March 21, 2014, Dr. Kumar reviewed the scan results with Plaintiff and prescribed cyclobenzaprine and hydrocodone with acetaminophen. AR 305-07.

On May 29, 2014, Plaintiff began physical therapy at Tulare Regional Medical Center Rehabilitation Services. AR 507-19. Plaintiff stopped coming to therapy after June 19, 2014. AR 510.

Dr. Kumar first noted chronic joint pain in the pelvic region on June 30, 2014. AR 325. X-rays of Plaintiff's hips revealed (1) mild degenerative changes with no acute fracture, dislocation or unusual effusion and (2) radiodensities of the pelvis consistent with phleboliths. AR 333. On September 3, 2014, Nkiruka Akabike, M.D., noted moderate chronic pain in multiple joints relieved by medication. AR 318.

On September 17, 2014, Plaintiff reported depression and bilateral knee pain and instability. AR 427. X-rays of Plaintiff's left knee revealed minimal joint fluid and posterior superior patellar spurring but no fracture, dislocation or destructive lesion. AR 421. At the follow-up appointment on October 21, 2014, Dr. Akabike noted that Plaintiff's intermittent knee pain continued and observed that the left knee was mildly swollen and tender. AR 416, 418. Plaintiff limped. AR 418. Plaintiff's chronic problems included continuous amphetamine or psychostimulant dependence; malaise and fatigue; visual discomfort; cannabis dependence; shoulder joint and neck pain; and, idiopathic scoliosis and/or kyphoscoliosis. AR 416.

On September 27, 2014, Plaintiff sought treatment for severe knee pain in the emergency department of Tulare Regional Medical Center. AR 493-504. Dr. Elton R. Tripp administered a Toradol injection and prescribed ibuprofen. AR 496, 500. Plaintiff was discharged with a diagnosis of knee pain of uncertain origin and directions to see her primary physician in the next day or two. AR 499. The record includes no evidence of follow-up treatment.

On October 22, 2014, Rosandra Novelo Soleno, L.C.S.W., conducted an intake interview for substance abuse treatment. AR 413-15. Plaintiff had been placed on "no narcotics" status after a urine test. AR 414. Ms. Soleno diagnosed:

4

| | | | |
|---|---|---|---|
| Axis I and II | 296.33 | | Major depressive affective disorder, recurrent episode, severe degree, without mention of psychotic behavior |
| | 305.20 | | Nondependent cannabis abuse, unspecified use |
| | 305.00 | | Nondependent alcohol abuse, unspecified drinking Behavior |
| | 305.70 | | Nondependent amphetamine or related acting sympathomimetic abuse, unspecified use |
| Axis III | | | Scoliosis and kyphoscoliosis, idiopathic, chronic Pain |
| Axis IV | | | Severe. Problems with primary support group, occupation and housing |
| Axis V | | | Current GAF = 50<br>Highest GAF = 50 |

AR 413-14.[4]

Ms. Soleno noted that Dr. Akabike had prescribed Celexa (an antidepressant), which Plaintiff took for three days and stopped. AR 414. She referred Plaintiff back to Dr. Akabike for a prescription of a different antidepressant, and recommended abstinence from all substances, promotion of healthy coping skills, and motivational interviews. AR 415. Plaintiff expressed willingness to stop abusing substances. AR 415.

The record includes notes from Ms. Soleno's counseling sessions with Plaintiff from November 6, 2014, through March 17, 2015. AR 374-75, 382-89, 396-401, 407-12. On November 24, 2014, Plaintiff reported that Celexa had partially relieved her feelings of depression but that she still felt irritable and worthless. AR 407.

///

---

[4] The Global Assessment of Functioning (GAF) scale is a rating from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. American Psychiatric Association 1994). A GAF of 41-50 corresponds to serious symptoms or a serious impairment in social, occupational, or school functioning. *Id*.

On January 5, 2015, Plaintiff began treatment of her knee pain with orthopedist Kenny Mai, M.D., at Adventist Health. AR 438-42. The intake interview notes that there was no alcohol or illicit drug abuse and no smoking in Plaintiff's household. AR 438-39, 442.

On January 9, 2015, Plaintiff received treatment in the emergency department of Tulare Regional Medical Center for weakness, numbness and extreme pain from the waist down. AR 476-92. Robert Kollen, M.D., prescribed Naproxen and Norco. AR 482. Plaintiff's discharge directed her to see her own physician the next day. AR 481.

On January 16, 2015, Plaintiff told Ms. Soleno that she had stopped taking Celexa, which she blamed for her mood and behavior, including driving recklessly at high speed. AR 388. Plaintiff refused any "psych meds" or a referral to psychiatry, insisting that she did not want to "pop pills." AR 388. She was using marijuana and drinking alcohol daily. AR 388.

X-rays of Plaintiff' knee taken January 28, 2015, revealed joint effusion and early degenerative changes with early osteophyte formation and the appearance of joint space narrowing medially. AR 381. The patella showed early degenerative changes and appeared to be slightly superiorly located which suggested a component of patella alta. AR 381. There was no loose calcification in the joint space nor evidence of fracture, dislocation or area of bony erosion. AR 381. On February 2, 2015, Dr. Mai diagnosed arthritis and opined that surgery was inadvisable. AR 431-32. Dr. Mai injected Plaintiff's knees with steroids. AR 431-32.

On February 11, 2015, Ms. Soleno reported that Plaintiff was making good progress and had a GAF of 60.[5] AR 382-84. On February 19, 2015, Dr. Akabike described Plaintiff's neck pain to be intermittent and of mild severity. AR 376. Plaintiff was still not taking her prescribed

///

---

[5] A GAF of 51-60 corresponds to moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Diagnostic and Statistical Manual of Mental Disorders* at 32-35.

antidepressant. AR 379. On March 17, 2015, Plaintiff advised Ms. Soleno that she was transferring mental health treatment to another program. AR 374.

From February 20, 2015 through January 11, 2016, Plaintiff received treatment for neck pain from Erik Persell, PA-C, at Family Healthcare Network Woodlake. AR 531-80. Following an intake examination on February 20, 2016, Mr. Persell diagnosed cervicalgia and refilled Plaintiff's prescription for cyclobenzaprine. AR 532. John Reifenberg, D.C., examined Plaintiff on February 25, 2015. AR 533-35. He diagnosed unspecified headache, cervicalgia and backache. AR 534.

On April 21, 2015, Plaintiff reported worsening depression. AR 538. She told Mr. Persell that she had briefly taken an antidepressant three months earlier but stopped using it after two weeks because she did not trust her medical provider. AR 538. Mr. Persell prescribed Sertraline. AR 539.

On May 6, 2015, Plaintiff requested a neck brace. AR 540. Mr. Persel noted that a recent MRI indicated disc herniations at C5-C6 and C6-C7. AR 540.

From June 17 through July 7, 2015, Plaintiff received physical therapy. AR 451-71. At intake, Plaintiff reported moderate pain that increased while she was performing self-care and prevented her from working. AR 469. She could not lift heavy weights from the floor, but could lift them if they were conveniently positioned. AR 469. Because of her severe pain, Plaintiff could "hardly read at all" and had frequent moderate headaches, difficulty concentrating and greatly disturbed sleep (defined as three to five hours sleepless). AR 469. Nonetheless, Plaintiff could drive her car as long as she wanted with moderate pain in her neck, and was able to engage in a few of her usual recreational activities. AR 469. On July 7, 2015, Kylee J. Roberge, P.T., D.P.T., discharged Plaintiff to her physician and reported no progress in therapy. AR 455. Dr.

///

Roberge opined that Plaintiff had fair rehabilitation potential due to chronic pain and low pain tolerance. AR 455.

On June 20, 2015, Meredith Casares, L.C.S.W., diagnosed major depressive disorder. AR 546. On September 11, 2015, Plaintiff reported experiencing unspecified "life-challenging" side effects of her anti-depressive medication which caused Mr. Persel to reduce the dosage by one-half. AR 558, 559. Nonetheless, Plaintiff reported that she was experiencing more good days than bad and had done some housework and quilting. AR 559.

Plaintiff received pain management treatment at LAGS Spine and Sports Care from January through May 2016. AR 338-67. At the initial examination, Plaintiff complained of 6/10 pain. AR 364. Neurological testing yielded mixed results, including abnormal sensation in some dermatomes and limitation of some ranges of cervical and shoulder motion. AR 364-65. A screening questionnaire administered on February 22, 2016, indicated severe depression. AR 358. Medication reduced Plaintiff's pain to 5/10. AR 358. Plaintiff received bilateral medial branch block injections and a steroid injection in the left knee. AR 346, 348, 350, 366. Prescriptions included Norco, diclofenac sodium and cyclobenzaprine. AR 339.

### C. **Medical Opinions**
#### 1. **Agency Physicians**

Agency physician I. Ocrant, M.D., noted that Plaintiff had significant (severe) degenerative disc disease of the cervical spine and took significant pain medication. AR 82, 83. The doctor opined that Plaintiff had the residual functional capacity for light work with restrictions on overhead reaching. AR 82, 84-85. Postural activities were unlimited except she could only occasionally climb ladders, ropes and scaffolds. AR 85. Neck mobility was limited. AR 85. On reconsideration, internist M. Ormsby, M.D., agreed with Dr. Ocrant's opinion. AR 94. Dr. Ormsby added environmental limitations to avoid concentrated exposure to extreme cold, concentrated vibration and hazards such as machinery and heights. AR 97.

Anna M. Franco, Psy.D., opined that Plaintiff had no medically determined mental impairment. AR 83. On reconsideration, E. Murillo, M.D., agreed. AR 94-95.

**IV.     Standard of Review**

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

**V.      The Disability Standard**

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate

9

> area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

## VI. Summary of the ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of May 12, 2014. AR 17. Her severe impairments included exogenic obesity, congenital spinal defect with scoliosis and degenerative disc disease of the lumbar spine, arthritis of the cervical spine, depression and anxiety, degenerative changes of the bilateral hip, myalgia, reflux esophagitis in remission, osteoarthritis of the bilateral knees, idiopathic scoliosis and kyphoscoliosis, marijuana, polysubstance and alcohol abuse, a major depressive affective disorder—recurrent and severe versus major depressive disorder—recurrent and moderate. AR 17. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526). AR 18-19.

The ALJ concluded that Plaintiff had the residual functional capacity to perform a wide range of light work as defined in 20 C.F.R. § 416.967(b). AR 19. Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; could stand, walk and sit six hours in an

eight-hour workday; but could not climb ladders, ropes or scaffolds. AR 19. Plaintiff could frequently perform all other postural activities including climbing ramps and stairs, stooping, crouching, crawling and kneeling. AR 19. She must avoid concentrated exposure to temperature extremes, vibration and dampness. AR 19. She can reach overhead and pull and push with her bilateral upper extremities no more than frequently. AR 19.

Plaintiff was able to perform her past relevant work as a manager trainee. AR 21-22. Accordingly, the ALJ found that Plaintiff was not disabled from May 12, 2014, through November 1, 2016 (the date of the hearing decision). AR 22.

### VII. Analysis of Plaintiff's Severe Mental Impairments

Plaintiff contends that the ALJ erred in identifying Plaintiff's severe mental impairments at step two, but failing to consider those impairments in the residual functional capacity analysis. The Commissioner responds that the ALJ properly addressed Plaintiff's mental impairments at step two. The Court agrees with the Commissioner that the ALJ's addressing Plaintiff's mental impairments at step two did not constitute reversible error.

#### A. The ALJ's Analysis

As summarized above, the ALJ found that Plaintiff had a medically severe combination of multiple impairments: exogenic obesity, congenital spinal defect with scoliosis and degenerative disc disease of the lumbar spine, arthritis of the cervical spine, depression and anxiety, degenerative changes of the bilateral hip, myalgia, reflux esophagitis in remission, osteoarthritis of the bilateral knees, idiopathic scoliosis and kyphoscoliosis, marijuana, polysubstance and alcohol abuse, a major depressive affective disorder—recurrent and severe versus major depressive disorder—recurrent and moderate. AR 17. The ALJ emphasized that a determination of disability required the Commissioner to "consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." AR 17 (citing 42 U.S.C. § 423(d)(2)(B)). In this case, Plaintiff's many physical and mental impairments were "severe in combination" because they collectively were more than slight abnormalities and caused more than minimal limitations in Plaintiff's ability to perform basic work activities. AR 17. However, not all of Plaintiff's impairments were severe if

considered separately.  AR 17.  In particular, Plaintiff's medically determinable mental impairments did not cause more than minimal limitation of Plaintiff's ability to perform basic mental work activities.  AR 18.

The ALJ found that Plaintiff's mental impairments caused no more than mild restriction of her activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace.  AR 18.  She had no episodes of decompensation.  AR 18.  The ALJ gave little weight to the medical treatment records relating to Plaintiff's depression, anxiety and substance use, noting that Plaintiff was noncompliant with medication prescribed for her depression.  AR 18.  In addition, Plaintiff could care for her pets, perform her own personal care, prepare simple meals, do housework, drive, shop, handle her own finances and socialize with others.  AR 18.  Despite her reports of defensiveness, anger and difficulty following instructions, Plaintiff paid attention and responded appropriately during the hearing.  AR 18.  Her mental health records indicated few functional restrictions, if any.  AR 18.

In analyzing Plaintiff's residual functional capacity, the ALJ noted that Plaintiff stopped taking anti-depressive medication after experiencing a physical side effect (swollen knees).  AR 20.  He gave some weight to the third-party report that Plaintiff was depressed and in pain, and had difficulty paying attention and following written and spoken instructions.  AR 21.  He gave little weight to the agency psychological consultants' opinions that Plaintiff had no medically determinable mental impairment.  AR 21.

### B. Standard of Review

"In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"  *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (quoting *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p) (internal quotations omitted).  As a result, a claimant's residual functional capacity should be the same whether or not certain impairments are considered severe.  *Buck*, 869 F.3d at 1049.  In this case, Plaintiff contends that the ALJ's failure to consider Plaintiff's mental impairments in the residual functional capacity analysis violated the agency's

///

12

own requirement that the ALJ's residual functional capacity analysis must include consideration of all of a claimant's limitations including those determined to be non-severe.

Plaintiff's contention relies on *Hutton v. Astrue*, 491 Fed. Appx. 850, 850-51 (9th Cir. 2012). *Hutton* is an unpublished decision that is not binding on this Court. *See generally* Fed.R.App.P. 32.1.

In *Hutton*, the ALJ determined at step two of the disability analysis that the claimant's mental impairment (PTSD) caused mild limitations in one of the functional areas. 491 Fed.Appx. at 850. At step four, however, the ALJ completely excluded the claimant's mental impairment from consideration. *Id.* at 851. The Ninth Circuit reversed holding that although the ALJ could give little weight to the claimant's testimony, the ALJ could not disregard his own finding of a mild mental impairment. *Id.* at 850-51.

The above-captioned case is factually distinguishable from Plaintiff's case. First, at step two, the ALJ emphasized that although Plaintiff's mental impairments contributed to a finding that her multiple impairments were collectively severe, they were not severe impairments individually. He found that any limitation resulting from Plaintiff's mental impairments alone was at most mild. He gave little weight to the treatment records, finding that Plaintiff did not take prescribed anti-depressive medication. In addition, Plaintiff maintained activities of daily living that were inconsistent with a conclusion that her mental impairments severely impacted her functional abilities.

The ALJ did not err in addressing Plaintiff's mental impairments in great detail at step two and briefly at step four. Although an ALJ must discuss and evaluate evidence leading to his conclusion, he is not required to do so under any particular heading in his written decision. *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001). An ALJ's discussion of the relevant medical evidence elsewhere in his decision should be considered in conjunction with a separate but related discussion of residual functional capacity at step four. *Evenhus v. Astrue*, 815 F.Supp.2d 1154, 1160 (D. Ore. 2011). Any such separate discussion constitutes sufficient consideration. *Id.* "[A]s long as the ALJ 'actually reviews the record and specifies reasons supported by substantial evidence supported by

substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error.'" *Lindsay v. Berryhill*, 2018 WL 3487167 at *6 (C.D. Cal. July 18, 2018) (No. SACV 17-01545-AFM) (quoting *Medlock v. Colvin*, 2016 WL 6137399 at *5 (C.D. Cal. Oct. 20, 2016) (No. CV 15-9609-KK)).

District courts in this circuit have generally declined to find reversible error when an ALJ found the claimant's mental impairments to be non-severe at step two and considered related, additional evidence of the claimant's mental impairments at step four. *See, e.g., Thompson v. Saul,* 2019 WL 3302471 at * 7 (E.D. Cal. July 23, 2019) (No. 1:18-cv-00137-BAM); *George A. v. Berryhill*, 2019 WL 1875523 at *4 (C.D. Cal. April 24, 2019) (No. 5:18-cv-00405-AFM); *Jones v. Berryhill*, 2018 WL 3956479 at *3 (C.D. Cal. Aug. 15, 2018) (No. EDCV 17-1138-AS); *McIntosh v. Berryhill*, 2018 WL 3218105 at *4 (C.D. Cal. June 29, 2018) (No. EDCV 17-1654 AGR). In this case, the Court agrees that having set forth his reasons for finding Plaintiff's mental impairments non-severe, the ALJ adequately considered Plaintiff's mental impairments in formulating her residual functional capacity.

## VIII. Credibility of Plaintiff's Pain Testimony

Plaintiff contends that the ALJ erred in failing to articulate his analysis and rejection of Plaintiff's testimony of excess pain. The Commissioner disagrees contending that in rejecting Plaintiff's testimony of disabling pain and mental disfunction, the ALJ appropriately considered the record as a whole. Having reviewed the record as a whole, the Court agrees that Plaintiff's account of disabling pain was inconsistent with the objective evidence of her symptoms and treatment.

An ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). His or her findings of fact must be supported by "clear and convincing evidence." *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

To determine whether the ALJ's findings are supported by sufficient evidence a court must consider the record as a whole, weighing both the evidence that supports the ALJ's determination and the evidence against it. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.

1989). "[A] federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "For highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)) (internal quotation marks omitted). Federal courts should generally "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at 1098).

A claimant's statement of pain or other symptoms is not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p. "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281-1282. In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." AR 20. The ALJ did not find Plaintiff to be malingering.

If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2. "[S]ome individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments,

15

the same objective medical evidence and the same non-medical evidence." S.S.R. 16-3p at 5. In reaching a conclusion, the ALJ must examine the record as a whole, including objective medical evidence, the claimant's representations of the intensity, persistence and limiting effects of her symptoms, statements and other information from medical providers and other third parties and any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10.

Because a "claimant's subjective statements may tell of greater limitations than can medical evidence alone," an "ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602 (9th Cir. 1989)). *See also Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence). "Congress clearly meant that so long as the pain is *associated* with a clinically demonstrated impairment, credible pain testimony should contribute to a determination of disability." *Id.* (internal quotation marks and citations omitted).

However, the law does not require an ALJ simply to ignore inconsistencies between objective medical evidence and a claimant's testimony. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). As part of his or her analysis of the record as a whole, an ALJ properly considers whether the objective medical evidence supports or is consistent with a claimant's pain testimony. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4) (symptoms are determined to diminish residual functional capacity only to the extent that the alleged functional limitations and

16

restrictions "can reasonably be accepted as consistent with the objective medical evidence and other evidence").

The ALJ did so here, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with medical evidence and other evidence in the record for the reasons explained in this decision." AR 20.

"If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). "[A] reviewing court should not be forced to speculate as to the grounds for an adjudicator's rejection of a claimant's allegations of disabling pain." *Bunnell*, 947 F.2d at 346. On the other hand, if the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Thomas*, 278 F.3d at 959. As long as the agency decision clearly expresses the basis for the agency's decision, a federal court will not reverse simply because the agency decision is explained with "less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492; *Treichler,* 775 F.3d at 1099.

After indicating his conclusion that Plaintiff's testimony was not fully consistent with other evidence in the record, the ALJ reviewed in detail the medical evidence of Plaintiff's severe physical impairments:

> The treatment record indicates complaints of pain mostly in the cervical spine, but also in the knees, hips, and upper extremities. Examinations have indicated some tenderness, limitation in range of motion of the neck, weakness in the upper extremities, and muscle spasms, but also normal sensation, reflexes, and muscle tone. The claimant participated in physical therapy in 2014 and 2015 without much improvement. The claimant's Body Mass Index indicates obesity. She reported using a stationary bicycle for exercise. The claimant recently underwent medial branch blocks in the cervical spine, and she has used Norco, NSAIDs, and muscle relaxers, as well as chiropractic care to help her symptoms.
>
> A CT of the cervical spine in March 2014 indicated minimal left sided neural foraminal narrowing at multiple levels secondary to hypertrophic changes, straightened lordosis, and C6-7 level degenerative disc space narrowing and spurring. X-rays of the pelvis and hips in July 2014 indicated mild degenerative changes with no

17

> acute fracture, dislocation, or unusual hip effusion, and radiodensities of the pelvis consistent with phleboliths. X-rays of the left knee in September 2014 indicated minimal joint fluid and posterior superior patellar spurring. X-rays of the left knee in January 2015 indicated some early degenerative change with early osteophyte formation and the appearance of joint space narrowing medially, joint effusion, and some early degenerative change involving the patella that appeared slightly superiorly located, suggesting a component of patella a[lt]a. X-rays of the cervical spine in February 2015 indicated some degenerative spurring at C5-C7 with some disc space narrowing, reverse lordosis suggesting muscle spasm, intact odontoid, no compression deformity or listhesis, and an [o]void soft tissue density in the posterior aspect of the neck of uncertain etiology.
>
> The claimant takes cyclobenzaprine, hydrocodone, sertraline and Aleve.

AR 20-21 (citations to administrative record omitted).

"[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities." S.S.R. 16-3p at 6. Because objective medical evidence may reveal the intensity, persistence and limiting effects of a claimant's symptoms, an ALJ must consider whether the symptoms reported by a claimant are consistent with medical signs and laboratory findings of record. *Id.* For example, "reduced joint motion, muscle spasm, sensory deficit, and motor disruption illustrate findings that may result from, or be associated with, pain." *Id.* Conversely, records indicating that a claimant has no muscle wasting bely a claimant's representation that he or she has been unable to walk no more than a few steps per day. *Id.*

As the ALJ found in this case, Plaintiff's claims of disabling pain were inconsistent with medical records showing mild and minimal joint degeneration and conservative treatment. The ALJ's determination was further supported by Plaintiff's failure to comply with medical treatment and recommendations and evidence of her ability to provide her own personal care and engage in a wide range of activities.

As is always the case in an appeal of the Commissioner's denial of disability benefits, Plaintiff would construe the evidence differently than the ALJ. Nonetheless, the hearing decision

///

18

sets forth sufficient evidence in the record to support the ALJ's determination that Plaintiff's representations to the agency were not fully credible. The Court will not second guess the ALJ's assessment of Plaintiff's credibility.

### IX. **Impact of Plaintiff's Drug and Alcohol Abuse**

Plaintiff also contends that the ALJ erred in failing to follow the procedure set forth in S.S.R. 13-2p for evaluation of a claimant who abuses drugs and alcohol. The Commissioner explains that the ALJ was only required to analyze the contributory effect of Plaintiff's drug and alcohol abuse if he found that Plaintiff was disabled. Since the ALJ found that Plaintiff's collective severe impairments did not result in her being disabled, he was not required to determine the extent to which Plaintiff's drug and alcohol abuse contributed to her disability. The Commissioner's explanation is correct.

The Social Security Act does not consider a claimant to be disabled if his or her alcoholism or drug addiction would be a material contributing factor to the Commissioner's determination that the claimant is disabled. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). Accordingly, if the Commissioner determines that a claimant who abuses drugs or alcohol is disabled after considering all of the claimant's medically determinable impairments, the Commissioner must then determine whether the claimant's substance abuse is a material factor in the disability determination by determining whether the claimant would be disables if he or she stopped abusing drugs or alcohol. 20 C.F.R. §§ 404.1503, 416.913. The applicable policy and procedure are detailed in S.S.R. 13-2p.

In this case, the ALJ concluded that Plaintiff was not disabled. Accordingly, he was not required to consider the effect of Plaintiff's drug and alcohol abuse.

### X. **Conclusion and Order**

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of

///

///

///

the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Mary Annette Denney.

IT IS SO ORDERED.

   Dated: **August 28, 2019**            **/s/ Gary S. Austin**
                                                         UNITED STATES MAGISTRATE JUDGE